UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
DONOHUE CANDY AND TOBACCO CO.,
INC., and KINGSTON CANDY & TOBACCO
CO., INC.,

**MEMORANDUM & ORDER**

     *Plaintiffs*,

19-CV-2079(KAM)(VMS)

       -against-

CONSUMER PRODUCT DISTRIBUTORS,
INC., d/b/a POLEP DISTRIBUTION
SERVICES,

     *Defendant*.
----------------------------------X

**MATSUMOTO, United States District Judge:**

        Plaintiffs Donohue Candy & Tobacco Co., Inc.
("Donohue") and Kingston Candy & Tobacco Co., Inc. ("Kingston"
and together with Donohue, "plaintiffs") brought this action
against defendant Consumer Product Distributors, Inc., doing
business as J. Polep Distribution Services ("Polep" or
"defendant") by filing a complaint on April 10, 2019, alleging
violations of New York's tax laws regulating the sale of
cigarettes. (ECF No. 1, Compl. 1.)[1] Prior to the commencement
of the instant action, plaintiffs Donohue and Kingston, along
with Amsterdam Tobacco Co., Inc. ("Amsterdam"), Mountain Candy &
Cigar Co., Inc. ("Mountain Candy"), and Sunrise Candy & Tobacco
Corp. ("Sunrise" and collectively with plaintiffs Amsterdam and

---

[1]    Unless stated otherwise, citations captioned "ECF No. _" refer to
electronic filings in Case No. 19-CV-2079.

Mountain Candy, the "original plaintiffs"), all licensed
cigarette distributors based in New York, brought a related
action in Kings County Supreme Court on February 6, 2018,
alleging similar violations of New York's tax laws regulating
cigarette sales, against Harold Levinson Associates, LLC
("HLA"), McLane Eastern, Inc., McLane Midwest, Inc., (together
with McLane Eastern, "McLane"), Plainfield Tobacco and Candy
Co., Inc., doing business as Resnick Distributors ("Resnick"),
defendant Polep, and Core-Mark Midcontinent, Inc. ("Core-Mark",
and together with defendants Polep and Resnick, the "original
defendants"). *See Amsterdam Tobacco Co., Inc. v. Harold
Levinson Assoc. LLC*, No. 18-CV-1432, slip op. (E.D.N.Y. Sept.
26, 2019); (ECF No. 11-2, Def.'s Mem. in Support Mot. to Dismiss
("Def.'s Mot.") 2, 7.)  McLane removed that action, which was
assigned docket number 18-CV-1432, to this court on March 8,
2018, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446(a).  *See
Amsterdam Tobacco*, No. 18-CV-1432, (ECF No. 1, Not. of Removal).

     In the removed case, *i.e.*, docket number 18-CV-1432,
the parties agreed to sever and remand all claims against HLA, a
citizen of New York. *See id.*, (ECF No. 20, Stip. re: Remand);
(ECF No. 34, Order dated 5/31/2018).  The parties then agreed to
dismiss all claims against McLane and certain claims against
each remaining defendant.

The original plaintiffs subsequently filed three amended complaints, one against each remaining defendant, Core-Mark, Resnick, and defendant Polep. *See id.*, (ECF Nos. 36-38, Am. Compls.); (ECF No. 39, Not. of Dismissal); (ECF No. 40, Stip. re: Severance). The original defendants have, respectively, moved to dismiss the amended complaints for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). *See generally id.*, (ECF Nos. 41-51).

The original plaintiffs and the original defendants soon sought to sever this case into three separate actions, each based on the three amended complaints, and the court ordered the original plaintiffs to open two new cases and file their respective amended complaints as an initiating pleading in their respective new cases, assigned docket numbers 19-CV-2079 and 19-CV-2080, allowing them to proceed upon dismissal of the earlier complaint. *See id.*, (Order dated 04/03/2019). Plaintiffs complied with the court's order and on May 1, 2019, the court dismissed without prejudice plaintiffs' claims against Polep in the original action, leaving only Amsterdam's, Donohue's, and Mountain Candy's claims against Core-Mark in that action. *See id.*, (Order dated 05/01/2019).

In the Complaint in the instant action, plaintiffs allege that defendant Polep systematically violated New York tax law by selling cigarettes to New York retailers at prices below

the statutory minimum price set by the New York Cigarette

Marketing Standards Act ("CMSA"), N.Y. Tax Law § 483, et seq.

(Compl. ¶¶ 1-2.)  Polep now moves this court to dismiss

plaintiffs' Complaint pursuant to Federal Rule of Civil

Procedure 12(b)(6) ("Rule 12(b)(6)") for failure to state a

claim.  (*See* ECF No. 11, Mot. to Dismiss; ECF No. 12, Pls.' Opp.

("Opp."); ECF No. 14, Def.'s Reply ("Reply").)  For the reasons

discussed below, the court DENIES defendant's motion and finds

that plaintiffs have sufficiently pleaded a violation of the

CMSA by Polep.

## BACKGROUND

The following facts are drawn exclusively from

plaintiffs' Complaint, which the court presumes to be true for

the purposes of analyzing defendant's 12(b)(6) motion.  *See*

*Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150,

154 (2d Cir. 2006) (citing *Allaire Corp. v. Okumus,* 433 F.3d

248, 249-50 (2d Cir. 2006)) (on a 12(b)(6) "motion, we are

constrained to accept as true the factual allegations contained

in the complaint and draw all inferences in plaintiff's favor.")

Plaintiffs are each New York corporations and cigarette

wholesale dealers (or "wholesalers"), and during the relevant

time period, were also licensed stamping agents.  (Compl. ¶¶ 12-

13.)  Defendant is a New Jersey corporation and, like

plaintiffs, is a licensed cigarette wholesaler and stamping agent in New York. (*Id.* ¶¶ 14-15.)

New York State regulates the distribution of cigarettes through its tax laws. (*See id.* at 4-10.) The State controls what entities can sell cigarettes, collects taxes on the sale of cigarettes, and sets certain minimum prices under the CMSA. (*Id.* at 4-5.) The typical distribution scheme for cigarettes begins with manufacturers who make and package cigarettes. (*Id.* ¶ 17.) In New York, as in many other states, stamping agents purchase cigarettes from the manufacturers and then purchase tax stamps from the state government. (*Id.*) The stamping agents affix these tax stamps to the cigarette packages and sell the stamped cigarettes to either wholesalers or retailers. (*Id.*) Wholesalers that are also licensed stamping agents will generally sell to retailers, though some wholesalers are not licensed stamping agents. (*Id.*)

Agents, wholesalers, and retailers must all be licensed by New York's Tax Department to sell cigarettes in the state. (*Id.* ¶ 18.) Defendant Polep is licensed as a stamping agent and wholesaler in New York; it purchases cigarettes from manufacturers, purchases and affixes tax stamps to the cigarette packages, and then sells the stamped cigarettes to retailers or smaller wholesalers. (*Id.* ¶ 20.)

The CMSA sets a minimum price by formula at which stamping agents and wholesalers in this distribution scheme may sell cigarettes.  (*Id.* ¶ 16.)  Plaintiffs allege that Polep has engaged in a "broad scheme" to drive its cigarette prices below the statutory minimum by giving rebates to its New York customers dating back to 2015 and earlier.  (*Id.* ¶ 45.)  Polep's list prices for cigarettes are almost always at the CMSA minimum price, and when it occasionally diverges from the minimum, its list prices exceed the minimum by "pennies."  (*Id.* ¶ 46.)  As a regular part of its business, Polep extended rebates in various forms to its New York customers, including per-carton rebates of $2.00 and $2.50.  (*Id.* ¶ 51.)  Polep's sales representatives used misleading codes on customer forms and invoices, allegedly invoicing per-carton rebates that gave the impression the amounts were for credits for damaged goods.  (*Id.* ¶ 53.)

Plaintiffs offer two specific examples where Polep either obtained business from former customers of plaintiffs in New York, or prevented plaintiffs from increasing sales by offering per-carton rebates.  Sometime in 2017, Kingston was a supplier to Congers BP, a New York cigarette retailer.  (*Id.* ¶ 58.)  Kingston sold both cigarettes and non-cigarette products, though cigarettes comprised about 95 percent of Kingston's sales to Congers.  (*Id.*)  Kingston charged Congers cigarette list prices at exactly the CMSA minimum price, and these prices were

the same as Polep's list prices. (*Id.* ¶ 59.)  Kingston stopped
receiving orders from Congers in 2017, and Kingston soon
discovered from Congers' owner that it had moved its business to
Polep because Polep was offering $2.00 per-carton rebates.  (*Id.*
¶¶ 60-61.)  No other competitor offered Congers cigarette prices
that were equal to or lower than Polep's prices.  (*Id.* ¶ 64.)

        Prior to 2016, Donohue was a secondary supplier to
Star 3 Fuel Corp ("Star"), a retailer in Queensbury, New York.
(*Id.* ¶ 67.)  At the time, Donohue charged its cigarette list
prices at exactly the CMSA-minimum, and Donohue's prices were
the same as Polep's list prices.  (*Id.* ¶ 68.)  Sometime in 2016,
a Star employee showed Donohue's vice president an email from
Polep in which Polep allegedly offered Star a $2.50 per-carton
rebate.  (*Id.* ¶ 69.)  Star noted that it would have used Donohue
as a primary supplier if not for Polep's rebates.  (*Id.*)  Star
continued its business relationship with Polep as a result of
these cigarette rebates.  (*Id.* ¶ 71.)  At the time, Donohue was
not aware of any other competitor that offered sales to Star at
prices equal to or lower than Polep's prices. (*Id.* ¶ 72.)

        In addition to these specific examples, plaintiffs
allege that a senior Polep sales manager apparently acknowledged
Polep gave rebates to New York retailers of $2.00 or $2.50 per
carton for weekly sales exceeding 100 cartons. (*Id.* ¶ 51.)  The
sales manager indicated the rebates are recorded as monthly

statement "credits" for "damaged goods." (*Id.* ¶ 53.)  The sales

manager instructed retailers receiving these credits not to

report the rebate because "the money's illegal" and it would not

be "by the book." (*Id.* ¶ 55.)

## JURISDICTION

The court has original jurisdiction over this dispute,

as plaintiff invokes the court's diversity jurisdiction pursuant

to 28 U.S.C. § 1332.  This case was properly removed pursuant to

28 U.S.C. § 1441 once the claims against HLA, the non-diverse

defendant, were severed and remanded.  Plaintiff Donohue is a

New York corporation and citizen, as is plaintiff Kingston.

(*Id.* ¶¶ 12-13.)  Defendant is a New Jersey corporation and

citizen that plaintiff alleges is a cigarette stamping agent and

wholesaler that has distributed cigarettes throughout New York,

including within the District. (*Id.* ¶¶ 14-15.)  Plaintiffs have

not specifically alleged an amount in dispute to satisfy 28

U.S.C. § 1332's requirement.  The court finds, however, that the

amount in dispute is "reasonably inferred" to exceed the

jurisdictional threshold of $75,000, given the volume of sales

at issue, the statutory price of a carton of cigarettes, and the

timeframe of the alleged conduct.[2] *Transaero, Inc. v. Chappell*,

---

[2]    Defendant challenges the sufficiency of plaintiffs' pleadings as to
damages. (Def.'s Mot. 14.)  The court does not view this argument by
defendant as moving against the Complaint for lack of jurisdiction.  That is,

No. 13-CV-5752 (JFB)(GRB), 2014 WL 1783732, at *10 (E.D.N.Y. May 6, 2014); *see also Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 223 (2d Cir. 2017) ("[W]e recognize a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy," and to rebut that presumption, defendant must "demonstrat[e] to a legal certainty that the plaintiff could not recover the amount alleged or that the damages alleged were feigned to satisfy jurisdictional minimums."). The court is thus satisfied that the amount in dispute exceeds the jurisdictional threshold and its exercise of diversity jurisdiction is proper. Finally, defendant has apparently consented to venue in this District. (Compl. ¶ 11.)

### LEGAL STANDARD

Defendant moves under Rule 12(b)(6) to dismiss the Complaint for failure to state a claim. To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead facts that, if accepted as true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is facially plausible when the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

---

it does not appear defendant argues the amount in dispute is less than $75,000, but rather that the damages are not sufficiently pleaded.

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint need not contain detailed factual allegations, but must contain more than mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" or "naked assertions" devoid of "further factual enhancement." *Id*. For motions under Rule 12(b)(6), the court assumes the truth of all facts asserted in the operative complaint and draws all reasonable inferences from those facts in favor of the non-moving plaintiff. *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 154 (2d Cir. 2006).

## DISCUSSION

## I.     Cigarette Marketing Standards Act

New York's legislature enacted the CMSA in response to a perceived need to regulate and stabilize cigarette sale prices due to predatory pricing by out-of-state dealers with similar minimum-price statutes. *Lorillard Tobacco Co. v. Roth*, 99 N.Y.2d 316, 319 (N.Y. 2003). The CMSA prohibits the sale of cigarettes below cost when the seller intends thereby to harm competition or to evade taxes. *City of New York v. Golden Feather Smoke Shop, Inc.*, No. 08-CV-3966, 2009 WL 705815, at *13 (E.D.N.Y. Mar. 16, 2009) (citing *Lorillard Tobacco*, 99 N.Y.2d at 316). Specifically, an agent, wholesale dealer, or retail dealer violates the CMSA when it advertises, offers to sell, or sells cigarettes at less than cost, with intent to injure

competitors, to destroy or substantially lessen competition, or to avoid the collection or payment of taxes.  N.Y. Tax Law § 484(a)(1).

Generally, the statute determines the minimum price for a carton of cigarettes by adding to the manufacturer's price (*i.e.*, the cost to a distributor) the cost of a tax stamp and a mark-up amount accounting for the wholesaler's or retailer's costs of doing business.  *See* N.Y. Tax Law § 483(a)-(b).  Under the statute, "cost" consists of the "basic cost of cigarettes" plus the agent's or dealer's "cost of doing business," which is also set by statutory formula.  *See id.*  The "basic cost of cigarettes" is in turn defined as "the invoice cost of cigarettes to the agent who purchases from the manufacturer . . . less all trade discounts, except discounts for cash, to which shall be added the full face value of any stamps which may be required by law."  *Id.* § 483(a)(1); *see also Golden Feather Smoke Shop*, 2009 WL 705815, at *13.

The CMSA includes an exception to sales below the statutory minimum that is applicable here.  Section 486 of the CMSA excludes sales "at a price made in good faith to meet the price of a competitor who is rendering the same type of services and is selling the same article at cost to him."  N.Y. Tax Law § 486(b)(1).  In the absence of proof of a specific competitor price, the CMSA deems the competitor's price the cost of the

wholesaler as determined by § 483, *i.e.*, the statutory minimum.
*Id.* § 486(b)(2).

The CMSA also contemplates distributors will sell
cigarettes together with other products, and that distributors,
in common business practice, may offer rebates, concessions, or
even gifts to customers. *See id.* § 485(a)(2)(b); *see also* N.Y.
Comp. Codes R. & Regs. tit. 20, § 84.1(b)(1) ("Generally, a
concession is the granting or yielding to a request or demand at
or before the time of sale, where as a rebate is a return of
something of value at a later time.").  In any sale including
other products or involving rebates, gifts, or concessions, the
wholesale dealer's combined selling price must not be below "the
total costs of all articles, products, commodities, gifts and
concessions included in such transactions."  N.Y. Tax Law §
485(a)(2)(b).  Though New York's regulations that enforce the
CMSA expressly state that rebates are not inherently unlawful,
they also caution against strictly construing the definitions of
both rebates and concessions "so as to narrow or circumvent the
cigarette marketing standards."  N.Y. Comp. Codes R. & Regs.
tit. 20, § 84.1(b)(1).

## II.    Collateral Estoppel

Defendant moves to dismiss the Complaint on the
grounds that plaintiffs are collaterally estopped from bringing
this action because a New York State court dismissed plaintiffs'

12

case against a different defendant based on similar allegations. (Def.'s Mot. 6-7.)  That is, defendant argues plaintiffs are barred from re-litigating the issues presented in the Complaint because they had a full and fair opportunity to be heard on virtually identical factual allegations in the New York State case, but nevertheless had their case dismissed.  (*Id.*)  Plaintiffs respond that Polep has itself previously argued that the issues litigated in this case and those litigated in the State case are not identical, and that the State case included allegations against a different cigarette agent and concerned different retailers than those in this action.  (Opp. 7.)  Plaintiffs additionally argue that the State court's decision dismissing the State action was "deeply flawed" and is on appeal.  (*Id.*)

Collateral estoppel, or issue preclusion, bars subsequent relitigation of "an issue of law or fact actually litigated and decided by a court of competent jurisdiction in a prior action . . . between the same parties or their privies." *Sandler v. Simoes*, 609 F. Supp. 2d 293, 298-99 (E.D.N.Y. 2009) (citation omitted).  Non-mutual collateral estoppel circumvents the identity of parties requirement by permitting non-parties to the original action to bar relitigation of the same issue in a subsequent suit "if a litigant has had an opportunity to fully and fairly litigate an issue and lost."  *Id.* (quoting *Austin v.*

*Downs, Rachlin & Martin*, 270 Fed. Appx. 52, 54 (2d Cir. 2008));
*Deng v. Aramark Educ. Grp., Inc.,* No. 04CV4536, 2006 WL 752826,
at *6 (E.D.N.Y. March 23, 2006) ("Under non-mutual collateral
estoppel, third parties unrelated to the original action can bar
the litigant from relitigating the same issue in a subsequent
suit."). "The term 'non-mutual' indicates that a new defendant
in the plaintiff's second lawsuit may defensively invoke
collateral estoppel regarding issues of law or fact decided in
the plaintiff's first action." *Jasper v. Sony Music Entm't,
Inc.,* 378 F. Supp. 2d 334, 343 (S.D.N.Y. 2005) ("By binding the
plaintiff to earlier judicial decisions in which he was a party,
defensive collateral estoppel precludes a plaintiff from getting
a second bite at the apple merely by choosing a new
adversary.").

A federal court "must give to a state-court judgment
the same preclusive effect as would be given that judgment under
the law of the State in which the judgment was rendered."
*Kiryas Joel All. v. Vill. of Kiryas Joel*, 495 F. App'x 183, 186
n.1 (2d Cir. 2012) (citing *Migra v. Warren City Sch. Dist. Bd.
Of Educ.,* 465 U.S. 75, 81 (1984)). Here, defendants assert
defensive collateral estoppel on the basis of a decision and
order by the New York State Supreme Court, and invoke New York
principles of collateral estoppel. Under New York law,
collateral estoppel may be invoked to preclude a party from

raising an issue (1) identical to an issue already decided; (2) in a previous proceeding in which that party had a full and fair opportunity to litigate; and (3) that is decisive in the present action. *See Curry v. City of Syracuse*, 316 F.3d 324, 331 (2d Cir. 2003) (explaining that the last factor slightly distinguishes state and federal collateral estoppel law). An issue is decisive "if it would prove or disprove, without more, an essential element of any of the claims set forth in the complaint." *Id.* at 332. In addition, "[t]he party seeking the benefit of collateral estoppel has the burden of demonstrating the identity of the issues . . . ." *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 456, 492 N.Y.S.2d 584, 482 N.E.2d 63 (1985).

The parties' dispute is limited to whether the issues here and in the State case are identical and it is defendant's burden to demonstrate that is so. Defendant argues that the allegations in the State court action are "virtually identical," that plaintiffs demand the same injunctive relief and damages, and that plaintiffs base their claims for relief under the same legal theory. (Def.'s Mot. 7.) Plaintiffs' legal theory was dismissed as insufficient to state a claim in the State court action. Thus, defendant argues, the identical legal question presented here has already been decided against plaintiffs. (*Id.*)

In response, plaintiffs point to Polep's Notice of Removal in the original *federal* case, No. 18-CV-1432, in which Polep argued that "the claims in this case do not 'arise[] out of the same transaction or occurrence'" as those in the State case. (Opp. 8 (citing ECF No. 5, Fox Aff., Ex. D., Not. of Removal).) Plaintiffs also cite to Polep's representations in this case that the original complaint in No. 18-CV-1432 "allege[d] that each [original] Defendant violated the CMSA in a series of separate and unrelated transactions." (*Id.* (citing ECF No. 28, Fox Aff., Ex. E, Polep Ltr. Requesting Pre-Mot. Conf.).)[3] Finally, plaintiffs argue that the State court decision rested, in part, on a factual finding—which plaintiff asserts is erroneous—that HLA, the defendant in the State case, had "'amply demonstrated'" facts concerning sales to customers not at issue in this case. (*Id.* at 8-9.)

Resolving this dispute demands a review of the State court decision itself. The State court decision made two findings. (ECF No. 11-1, Koshgarian Aff., Ex. C, State court decision.) *First*, the State court found that HLA "amply demonstrated" that it lowered its prices to compete with others,

---

[3]     Plaintiffs appear to conflate the elements of claim preclusion and issue preclusion, two related but separate doctrines. Claim preclusion under New York law requires that two actions arise from the same transaction, *see Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 287 (2d Cir. 2002), but issue preclusion does not.

and therefore satisfied the CMSA's good faith exception for meeting competition. (State court decision 9 (analyzing N.Y. Tax. Law § 486(b)(1).) *Second*, the State court determined HLA's alleged offers of rebates did not constitute a "*per se* violation" of the CMSA. (*Id.* at 12.) Although the State court decision analyzes the CMSA and its exceptions in depth, it is bereft of factual discussion. The State court did not clarify *how* HLA availed itself of the good faith meeting competition exception or *why* HLA's rebates, in conjunction with plaintiffs' other allegations, did not violate the CMSA. This court is unable to discern the State court's reasoning and how it applied the facts before the court to the applicable law.

The difficulty in ascertaining the State court's reasoning renders its decision an inappropriate basis to preclude plaintiffs' claims against *this* defendant. Defendant has not shown with clarity how the State court decision resolved the issue before this court. *See S.E.C. v. Monarch Funding Corp.*, 192 F.3d 295, 309 (2d Cir. 1999) ("[I]n the absence of clarity on this issue, applying collateral estoppel . . . would be improper."); *see also In re Refco Inc. Sec. Litig.*, No. 07-MD-1902 (JSR), 2010 WL 11475742, at *11 (S.D.N.Y. Mar. 2, 2010), *report and recommendation adopted*, No. 07 MDL 1902 (JSR), 2011 WL 13168455 (S.D.N.Y. May 4, 2011) (issue preclusion denied where movant "failed to show with clarity that [prior decision]

decided the issue in this case"); *Mitchell v. Humana Hosp.-Shoals*, 942 F.2d 1581, 1584 (11th Cir. 1991)(refusing to apply collateral estoppel "[b]ecause the state court did not specify the reasons for its decision, [and] we cannot be certain if the court actually decided" the issue on the ground that would allow preclusion). Given this uncertainty, the court simply cannot say with any assurance exactly what issues the State court decided, or whether its resolution of those issues are "decisive" in the instant case.

Defendant did not carry its burden of showing that the issues in the State court matter are identical to those at bar. The State court case concerned HLA's liability for alleged violations as to different retailers, none of which are presented here. *Cf. Barrett v. Tema Dev. (1988), Inc.*, 463 F. Supp. 2d 423, 428 (S.D.N.Y. 2006), *aff'd*, 251 F. App'x 698 (2d Cir. 2007) (issues were not identical where "facts underlying [] claim to jurisdiction in this Court are substantially different from the facts . . . argued for personal jurisdiction in [] state court action."). Further, plaintiffs' assertion of similar legal theories here and in State court says nothing about why the State court rejected those legal theories against HLA. Defendant insists that defensive collateral estoppel precludes a plaintiff from litigating identical issues after merely "switching adversaries." (Def.'s Mot. 6 (citing *Parklane*

*Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 330 (1979)).)  Under

different circumstances, that may be true;[4] however, facially

identical legal theories do not equate to identical issues for

purposes of collateral estoppel, and the State court decision

gives no indication what issues warranted dismissal based on the

interaction of plaintiffs' legal theories and factual

allegations.  As a result, there is no basis for this court to

determine whether the issues in the State court decision and

this pending motion are identical.

Defendant's motion to dismiss on the ground of issue

preclusion is therefore denied.

## III.     Statute of Limitations

Though defendant originally moved to dismiss some of

plaintiffs' claims as time-barred, (Def.'s Mot. 8-9), it appears

to have abandoned this argument on reply, (Reply 4-9; *see also*

Opp. 9).  Defendant's initial argument focuses on plaintiffs'

allegations concerning conduct that predated 2015, more than

three years prior to the date plaintiffs initiated the original

state court action.  (Def.'s Mot. 9.)  Plaintiffs, however,

respond that they assert no claims for damages accruing earlier

---

[4]     For instance, if the "switched" parties were in privity or if a
question of liability concerned the same conduct, as under the doctrines of
vicarious liability or respondeat superior, a plaintiff's suit could be ripe
for preclusion.  Thus, defensive collateral estoppel might preclude a
plaintiff from suing a shipping company for a truck driver's negligence if
the truck driver had already been found not negligent in the plaintiff's
prior suit against the truck driver. Such circumstances are not present here.

than the statutory period.  (Opp. 9.)  Indeed, plaintiffs only

appear to bring claims for specific conduct occurring from 2015

and afterwards.  Absent application of the continuing violation

doctrine, plaintiffs' damages, if any, will be limited by the

applicable three-year limitations period governed by New York

law.  *See* C.P.L.R. § 214(2).  Defendant's motion to dismiss on

this ground is therefore denied as moot, as it appears

plaintiffs have not alleged specific violations, and do not seek

damages for such violations, predating 2015.

## IV.     Pleading Exceptions

Defendant argues that the Complaint fails to allege

that its conduct did not fall within the CMSA's exception for

meeting competition in good faith.  (Def.'s Mot. 12-13; Reply 7-

8.)  Plaintiffs respond that the good faith exception for

meeting competition requires a wholesaler to prove a

competitor's below-CMSA-minimum price, which defendant has not

done.  (Opp. 11-12.)

As noted above, this action stems from that originally

filed in Docket No. 18-CV-1432, before the undersigned.  *See*

*Amsterdam Tobacco Co. v. Core-Mark Midcontinent, Inc.*, No. 18-

CV- 1432, 2019 WL 4696282, (E.D.N.Y. Sept. 26, 2019).  There,

the remaining defendant, Core-Mark, moved to dismiss the amended

complaint, arguing, in part, that the plaintiffs had failed to

allege that the meeting competition in good faith exception did

not apply.  *Id.* at *5.  The court denied the motion to dismiss,

finding that the CMSA did not require a plaintiff to plead facts

affirmatively refuting a possible exception available to the

defendant.  *Id.* at *6.  Defendant makes the same argument in

moving to dismiss the Complaint in this action.  For the same

reasons articulated in the court's September 26, 2019, Order,

the court denies defendant's motion to dismiss on these grounds.

The CMSA's exception for meeting competition in good faith need

not be pleaded in the negative to survive a motion to dismiss.

Instead, the CMSA's statutory structure makes clear the

exception is an affirmative defense that excludes certain

conduct, rather than an element to be affirmatively pleaded.

## V.   Cigarette Sales Below CMSA Minimum

Defendant additionally argues that plaintiff has

failed to allege any cigarette sales by Polep at prices below

the CMSA's statutory minimum because the giving of rebates is

not prohibited conduct under the CMSA.  (Def.'s Mot. 10-12.)

Plaintiffs respond that the CMSA contemplates that rebates "are

one of the mechanisms that can be used to push prices below the

legal minimum."  (Opp. 10.)

Defendant's assertion that rebates are not *per se*

illegal under the CMSA is, of course, accurate *if* the rebate

"does not directly or indirectly serve to reduce the price below

that at which cigarettes can be lawfully sold or purchased in

[New York]." N.Y. Comp. Codes R. & Regs. tit. 20, § 84.1(b)(2).

Indeed, rebates are not inherently illegal under the CMSA, but

they are suspect, as the giving of rebates permits a presumption

of intent to harm competition. N.Y. Tax Law § 484(a)(6). What

matters, then, is not that defendant allegedly offered or gave

rebates, but the effect of those rebates, "directly or

indirectly," on the price at which Polep sold cigarettes as

compared to Polep's costs. The CMSA requires the wholesale

dealer's combined selling price "not be below the cost of the

. . . wholesale dealer . . . of the total costs of all articles,

products, commodities, gifts and concessions." N.Y. Tax Law §

485(b). On Reply, defendant attempts to draw a distinction

between giving and offering rebates, arguing that the two acts

are not interchangeable. (Reply 6.) This argument, however,

misses the point, which is that conduct harmful to competition

and thus proscribed by the CMSA includes offering or selling

cigarettes at less than the wholesaler's costs.

Defendant asserts that the Complaint does not allege

any sales below the CMSA minimum, (Def.'s Mot. 11), but even a

cursory review establishes that defendant is incorrect. In just

one example, the Complaint describes how plaintiff Kingston had

supplied a particular retailer, Congers, and charged list prices

exactly at the CMSA minimum, the same as Polep's list prices.

(Compl. ¶¶ 58-59.) After Kingston stopped receiving orders from

Congers in 2017, it inquired and learned from Congers' owner
that Polep had been giving Congers rebates of $2.00 per carton.
(*Id.* ¶ 61.)  Kingston consequently lost all of its business with
Congers to Polep.  (*Id.* ¶ 63.)  Further, plaintiff alleges
defendant's own sales manager admitted to defendant's use of
rebates based on cigarette carton volume, and defendant's
knowledge that the conduct violated the law.  (*Id.* ¶¶ 51-55.)
Taken together, these allegations, which the court must assume
are true when deciding a motion to dismiss, offer sufficient
support to plaintiffs' claim that Polep sold cigarettes at less
than its cost.  Plaintiffs also plead another example of such
per-carton rebate arrangements by Polep, and further allege that
Polep's rebates "push its prices below the statutory minimum"
when its prices are at or pennies above the CMSA minimum.  (*Id.*
¶ 52.)  Plaintiffs further allege that they have suffered a loss
or reduction of cigarette business as a result of Polep's
alleged conduct.  (*Id.* ¶ 75.)  These allegations thus satisfy §
484, which makes it unlawful to advertise, offer to sell, or
sell cigarettes for less than a wholesaler's costs.  If
defendant's alleged use of credits did not, in fact, reduce its
cigarette sales price below its costs, discovery may bear that
out, and defendant may move for summary judgment on that ground.

        Finally, as to § 484's intent requirement, the CMSA
provides that evidence of offering or giving a rebate or

concession "of any kind or nature whatsoever in connection with the sale of cigarettes . . . shall be *prima facie* evidence" of the CMSA's intent requirement.  N.Y. Tax Law § 484(a)(6) (emphasis added).  As plaintiffs allege, Polep's offered rebates drove down its sale prices to below its costs, and, thus, plaintiff has sufficiently pleaded that Polep violated § 484 of the CMSA.  Therefore, defendant's motion to dismiss on this ground is denied.

## VI.  Damages Sufficiently Pleaded

Finally, defendant moves to dismiss the Complaint on the ground that plaintiffs did not sufficiently plead damages. (Def.'s Mot. 14.)  Plaintiffs respond that they need only plead facts sufficient to reasonably measure or infer damages, and that the Complaint's allegations that plaintiffs lost business are sufficient as to damages.  (Opp. 13-14.)  Defendant also argues that plaintiffs only allege specific statutory prices from October 2017, which would not apply to much of the alleged conduct, and that plaintiffs failed to mitigate their damages. (Def.'s Mot. 14-15.)  As to defendant's latter argument regarding mitigation, plaintiffs respond that defendant is attempting impermissibly to add requirements to the pleading standard, *i.e.*, requiring a plaintiff to "plead a defendant's affirmative defense."  (Opp. 14.)

The court agrees with plaintiffs that the amount of damages is reasonably inferable and measurable such that the allegations in the Complaint are sufficient to survive a motion to dismiss. Plaintiffs need not plead all the applicable statutory prices to be entitled to damages for defendant's alleged violations throughout the damages period. Instead, the CMSA's statutory scheme that sets a minimum carton price, and defendant's alleged practice of charging near or at that minimum, facilitates a damages calculation here. Plaintiffs adequately explained how this pricing mechanism worked in the Complaint. (Compl. ¶¶ 27-37.) The court, or a jury, should have little difficulty calculating damages for defendant's alleged violations of the CMSA based on evidentiary support for these allegations. Finally, Defendant cites no authority for its mitigation argument and, in any event, the court finds it is without merit for purposes of defendant's motion.

**CONCLUSION**

For the foregoing reasons, defendant's motion to dismiss is DENIED.  The parties shall proceed to discovery and are hereby respectfully referred to Magistrate Judge Scanlon for all pre-trial matters.

**SO ORDERED.**

Dated:   November 12, 2019
         Brooklyn, New York

_____/s/_____
**Kiyo A. Matsumoto**
United States District Judge